UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JERMELL McLEAN,

                                  Plaintiff,

     -against-                                     9:19-CV-1227 (LEK/ATB)

SUPERINTENDENT OF FRANKLIN
CORRECTIONAL FACILITY, *et al.*,

                                  Defendants.

## DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Jermell McLean commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983, together with an application for leave to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Complaint"); Dkt. No. 3 ("IFP Application"). In his Complaint, Plaintiff asserted claims based on alleged wrongdoing that occurred while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Franklin Correctional Facility ("Franklin C. F."). See generally Compl. After granting Plaintiff's IFP Application, the Court conducted a sufficiency review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Dkt. No. 6 ("November 2019 Decision and Order"). In doing so, the Court construed the Complaint to assert Eighth Amendment medical indifference claims against Transport Officer John Doe #1, Transport Officer John Doe #2, and the Superintendent of Franklin C. F. ("Superintendent"). Id. at 5. The Court found that Plaintiff's medical indifference claim against John Doe #1 survived sua sponte review, id. at 8, 12, but dismissed Plaintiff's remaining claims, along with John Doe #2 and the Superintendent, without prejudice, id. at 8–10,

12–13. Finally, the Court directed the New York State Attorney General's Office to ascertain the identity of "John Doe #1," the sole remaining defendant. Id. at 12.

On December 5, 2019, Richard White, an assistant attorney general in the New York State Attorney General's Office, filed a Status Report regarding the potential identity of John Doe #1. See Dkt. No. 7 ("December 2019 Status Report"). In a text order dated, December 13, 2019, the Court directed Plaintiff to review the December 2019 Status Report and, to the extent possible, submit a proposed amended complaint that substitutes the named defendant in place of John Doe #1. See Dkt. No. 8 ("December 2019 Text Order").

On January 27, 2020, Plaintiff filed an amended complaint. Dkt. No. 9 ("Amended Complaint").[1] The Clerk has sent Plaintiff's Amended Complaint to the Court for review.

## II. SUFFICIENCY OF THE AMENDED COMPLAINT

### A. Governing Legal Standard

When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that – . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(B). Thus, even if a plaintiff meets the financial criteria to commence an action IFP, it is the court's responsibility to determine whether the plaintiff may properly maintain the amended complaint. See id.

---

[1] In a letter dated March 9, 2020, Plaintiff informed the Court that, in retaliation for filing this action, one or more unidentified officials may have interfered with Plaintiff's ability to receive a medical procedure. See Dkt. No. 10. Although Plaintiff has filed a grievance about this incident, see id., the Court advises Plaintiff that he should continue to pursue his concerns through the grievance procedures established by Franklin C. F. and DOCCS. If necessary, Plaintiff may pursue any retaliation claims he may have through a properly filed court action.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." § 1915A; see also Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both §§ 1915 and 1915A are available to evaluate prisoner pro se complaints).

A court may not dismiss a complaint if the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Twombly, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of

further factual enhancement" will not suffice. Id. (internal quotation marks and alterations omitted).

The Court must construe pro se complaints liberally, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).

### B. Summary of the Amended Complaint

Plaintiff's Amended Complaint names Correction Officers Theodore Harris and Todd Raymond in place of John Doe #1 and John Doe #2, respectively, and Darwin LaClair in place of the Superintendent. See generally Am. Compl. It also asserts medical indifference claims against these officials based on allegations that are materially similar to those found in the Complaint. Compare Compl. with Am. Compl. The following facts are set forth as alleged in the Amended Complaint.

On July 29, 2019, Plaintiff was transported by Harris and Raymond to Alice Hyde Hospital for a surgical procedure to repair the torn anterior cruciate ligament in his left knee. Id. at 3.[2] Harris and Raymond remained with Plaintiff "the entire time, during pre-operative preparation, surgery, recovery, and post-operative discharge examination and instructions." Id. "Both Harris and Raymond were present when the hospital staff gave plaintiff specific

---

[2] Citations refer to the pagination generated by CM/ECF, the Court's electronic filing system.

instructions to not bear any weight on [his left] leg, to allow the surgical adhesive time to cure and to allow the ligament to knit back together." Id. at 3–4.

Following the surgery, hospital staff attempted to provide Plaintiff with metal crutches. Id. at 4. However, as a result of LaClair's policy that inmates may not have metal objects in Franklin C. F., one of the correction officers told the hospital staff that Plaintiff "could not have metal crutches, and . . . would be given a pair of [permitted] crutches . . . when he arrived at the facility." See id. Plaintiff left the hospital at approximately 3:35 p.m. Id.

For unspecified reasons, Plaintiff's transport van, upon arriving back at Franklin C. F., was unable to enter the prison complex through the "Truck-Trap, which is the way prisoners are commonly transported and returned." Id. at 5. Had the van been able to proceed through this entrance, it could have dropped Plaintiff off at the medical unit. Id. Upon realizing that he would not receive pay for waiting until the Truck-Trap accepted the van, Raymond remarked, "We have to get [Plaintiff] to medical fast so we can get the hell out of here." Id. at 4. Harris replied, "[Y]eah, I'm not staying here any longer if I am not getting paid for it." Id. Harris and Raymond then parked the van in Franklin C. F.'s front parking lot and told Plaintiff he had to walk to the prison. Id. at 5.

Before exiting the van, Plaintiff "protest[ed] about being made to walk on [his] recently repaired leg in direct contradiction of the discharge instructions." Id. at 6. In response to Plaintiff's concerns, Raymond stated, "'Come on, you can make it with my help,' and Harris added that Raymond "was giving [Plaintiff] a 'direct order[.]'" Id.

As Plaintiff exited the van, Raymond "did not brace the plaintiff to prevent him from bearing weight on the leg" because the handcuffs on Plaintiff's wrists, which were affixed to a

5

"[b]lack [b]ox" and a "[b]elly [c]hain," prevented Raymond from physically supporting Plaintiff's arm. Id. (internal quotation marks omitted). Instead, Raymond "merely 'guided' plaintiff's arm" as Plaintiff stepped down from the van. Id. Harris and Raymond then "forced the plaintiff to walk on his left leg, <u>without</u> the aid of any crutches, cane or a wheelchair, through the Administration Building, to a holding area, a distance of between 500-1000 feet." Id. at 5 (emphasis in original).

As Plaintiff entered the prison, he "felt something snap, and immediately felt an intense heightened pain, and burning in the surgery area . . . shooting up into his hip and down to his foot." Id. at 7. Once Plaintiff reached a metal bench on the other side of the Administration Building, a non-party correction officer arrived at the scene and "call[ed] medical [to] have them bring a wheelchair for the rest of plaintiff's journey to the medical unit[.]" Id. at 6.

That same day, Plaintiff filed a grievance with "the [Inmate Grievance Program] Supervisor" regarding "the Superintendent's policies of no metal crutches . . . and the acts of the defendants Harris and Raymond in forcing plaintiff to walk on a newly surgically repaired knee which they were explicitly informed was medically contraindicated[.]" Id. at 8–9. Plaintiff has yet to receive a response to this grievance after multiple follow ups, including by a family member on Plaintiff's behalf. Id. According to Plaintiff, more than "150 similar grievances have been filed against [Harris and Raymond] and other transportation unit officers, and appealed to and denied by [LaClair]." Id. at 10.

Since his return from the hospital, Plaintiff "has suffered and continues to suffer constant pain and burning sensations in [his] knee, trouble sleeping, w[a]lking, standing, and performing

6

every day tasks." Id. at 7. Plaintiff has also "developed a mold-like rash covering the skin on his left hip, which was not there prior to the surgery." Id.

Plaintiff avers that he may not have been harmed had LaClair 1) instituted a policy that allowed Plaintiff to bring metal crutches into Franklin C. F.; 2) "properly trained" Harris and Raymond on how to handle inmates in Plaintiff's condition; and 3) instituted a policy that paid Harris and Raymond for waiting with Plaintiff until the Truck-Trap accepted the van. See id. at 2, 5, 10.

Plaintiff claims that Harris, Raymond, and LaClair violated his Eighth Amendment rights to adequate medical care. Id. at 9–10.

**C. Analysis**

"42 U.S.C. § 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). Section 1983 does not create any substantive rights; it provides civil litigants a procedure to redress the deprivation of rights established elsewhere. Id. (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under the color of state law deprived him of a federal right." Id.

*1. Harris and Raymond*

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of the Eighth Amendment's prohibition against cruel and unusual punishments. Estelle v. Gamble, 429 U.S. 97, 102, 104 (1976). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible

7

with "the evolving standards of decency that mark the progress of a maturing society." Id.; see also Whitley v. Albers, 475 U.S. 312, 319 (1986). While the Eighth Amendment "does not mandate comfortable prisons . . . neither does it permit inhumane" treatment of those in confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious," Chance, 143 F.3d at 702 (internal quotation marks and citations omitted), "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists," Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," Chance, 143 F.3d at 702 (internal quotation marks and citations omitted), that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety," Farmer, 511 U.S. at 837; see also Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999) (Noting that with respect to the subjective element, a plaintiff must also demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by'wantonness'").

Non-medical personnel may be held liable for deliberate indifference to medical needs where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to medical care or intentionally interfered with medical treatment once it was prescribed. See Banks v. No. 8932 Corr. Officer, No. 11-CV-8359, 2013 WL 673883, at *4 (S.D.N.Y. Feb. 25, 2013)

8

("A prison guard's deliberate indifference to a serious medical need of a prisoner means intentionally denying or delaying access to medical care or intentionally interfering with medical treatment once it was prescribed."); Davidson v. Scully, No. 83-CV-2025, 1994 WL 669549, at *12 (S.D.N.Y. Nov. 30, 1994) ("Evidence of deliberate indifference may be found in: . . . deliberate interference with a prisoner's prescribed treatment . . . ." (internal quotation marks and citations omitted)).

Despite explicit instructions to not have Plaintiff bear any weight on his surgically-repaired left knee, Harris and Raymond unnecessarily forced Plaintiff to walk to the prison so that they could avoid working overtime without pay. Am. Compl. at 3–7. Because of Harris and Raymond's actions, Plaintiff injured his knee. Id. at 7. At this early stage of the proceedings, and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, see Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that Plaintiff's Eighth Amendment claims against Harris and Raymond survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

2. LaClair

It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)) (other

9

citation omitted). "[V]icarious liability is inapplicable to . . . § 1983 suits." Iqbal, 556 U.S. at 676.

A supervisory official, such as LaClair, may not be held liable merely because he " held a high position of authority." See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."). Rather, supervisory personnel may be considered "personally involved" in an alleged constitutional violation only if they 1) directly participated in the violation; 2) failed to remedy that violation after learning of it through a report or appeal; 3) created, or allowed to continue, a policy or custom under which the violation occurred; 4) were grossly negligent in managing subordinates who caused the violation; or 5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[3] "Once a plaintiff properly alleges that a defendant was personally involved in a constitutional deprivation, [he] 'must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation.'" Harrell v. New York State Dep't of Corr. & Cmty. Supervision, No. 15-CV-7065,

---

[3] The Second Circuit has not yet addressed how the Supreme Court's decision in Iqbal affected the standards in Colon for establishing supervisory liability. See Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[,]" but not reaching the impact of Iqbal on Colon because the complaint "did not adequately plead the Warden's personal involvement even under Colon"); Hogan v. Fischer, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [Iqbal ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations . . . .") (citing Grullon, 720 F.3d at 139). For purposes of this Decision and Order, the Court assumes that all five categories under Colon remain valid.

2019 WL 3821229, at *7 (S.D.N.Y. Aug. 14, 2019) (quoting Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014)).

Plaintiff alleges that he may not have been harmed had LaClair 1) instituted a policy that allowed Plaintiff to bring metal crutches into Franklin C. F.; 2) "properly trained" Harris and Raymond on how handle inmates returning to the prison after undergoing surgery; and 3) instituted a policy that paid Harris and Raymond for waiting until the Truck-Trap accepted the van. See Am. Compl. at 2, 5, 10. Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, the Court finds that Plaintiff's Eighth Amendment medical indifference claim against LaClair survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### III. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, the Amended Complaint (Dkt. No. 9) is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED**, that the Clerk shall revise the docket as follows: 1) substitute Theodore Harris for C.O. John Doe #1; 2) substitute Todd Raymond for C.O. John Doe #2; and 3) substitute Darwin LaClair for the Superintendent of Franklin Correctional Facility; and it is further

**ORDERED**, that Plaintiff's § 1983 claims against Harris, Raymond, and LaClair **SURVIVE** sua sponte review and require a response; and it is further

**ORDERED**, that Harris, Raymond, and LaClair (or their counsel) must respond to the Amended Complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that the Clerk shall issue summonses and forward them, along with copies of the Amended Complaint, to the United States Marshal for service upon Harris, Raymond, and LaClair. The Clerk shall forward a copy of the summonses and Amended Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that all pleadings, motions, and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED**, that the Clerk serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:  April 07, 2020
        Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge