UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JERMELL McLEAN,

                      Plaintiff,

  -against-                                        9:19-CV-1227 (LEK/ATB)

DARWIN LaCLAIR, *et al.*,

                      Defendants.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Pro se plaintiff Jermell McLean brings this action against several officials at Franklin Correctional Facility ("Franklin C.F."), asserting Eighth Amendment claims related to the alleged denial of his medical needs while he was incarcerated there. Dkt. No. 9 ("First Amended Complaint" or "FAC").[1] Defendants filed a combined motion for summary judgment and motion to dismiss. Dkt. Nos. 17 ("Motion"); 17-3 ("Tavernier Declaration"); 17-4 ("Seguin Declaration"); 20 ("Response"); 21 ("Reply"). In a Report-Recommendation issued on August 5, 2020, the Honorable Andrew T. Baxter, United States Magistrate Judge, granted Defendants' motion for summary judgment on exhaustion grounds, while also reaching the substance of Plaintiff's claim against Defendant Darwin LaClair, dismissing it for failure to state a claim. Dkt. No. 22 ("Report-Recommendation"). Plaintiff filed objections. Dkt. No. 23 ("Objections"). For the reasons that follow, the Court rejects the Report-Recommendation with respect to exhaustion, while adopting its conclusion regarding Plaintiff's claim against LaClair.

---

    [1] Plaintiff refers to this document as his "First Amended Complaint"; thus, the court will do the same.

1

## II. BACKGROUND

### A. Factual Background

#### 1. Medical Transport Incident

The facts are detailed in the Report-Recommendation, familiarity with which is assumed. For convenience, the Court summarizes facts relevant to this Memorandum-Decision and Order, while noting factual disputes.

On July 29, 2019, Plaintiff was transported by Correction Officers Theodore Harris and Todd Raymond to Alice Hyde Hospital for a surgical procedure to repair the torn anterior cruciate ligament in his left knee. FAC ¶ 10.[2] Harris and Raymond remained with Plaintiff "the entire time, during pre-operative preparation, surgery, recovery, and post-operative discharge examination and instructions." Id. ¶ 11. "Both Harris and Raymond were present when the hospital staff gave [P]laintiff specific instructions to not bear any weight on [his left] leg, to allow the surgical adhesive time to cure and to allow the ligament to knit back together." Id. ¶ 12.

---

[2] Because Plaintiff has sworn to the allegations in his First Amended Complaint on penalty of perjury, the Court treats the First Amended Complaint as the legal equivalent of an affidavit, for evidentiary purposes. See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)."). The Court does so even though the First Amended Complaint is not notarized. See, e.g., Franco v. Kelly, 854 F.2d 584, 587 (2d. Cir. 1988) (noting that documents sworn under penalty of perjury may suffice for summary judgment purposes even if they do not meet all of the formal requirements of a notarized affidavit) (citing Pfeil v. Rogers, 757 F.2d 850, 859, 859 n.15 (7th Cir. 1985)); Tolbert v. Koenigsmann, No. 13-CV-1577, 2018 U.S. Dist. LEXIS 36451, at *6 n.8 (N.D.N.Y. Mar. 2, 2018) ("Although plaintiff's amended complaint is not notarized, in light of his pro se status, I have considered it as the legal equivalent of an affidavit for purposes of the pending summary judgment motion."); BMS Entm't/Heat Music LLC v. Bridges, No. 04-CV-2584, 2005 WL 2482493, at *2 n.1 (S.D.N.Y. Oct. 7, 2005) (accepting as a declaration under 28 U.S.C. § 1746 an affidavit that was not notarized but "certified" that "each of the statements contained herein is true to the best of my information and belief" and contained a "penalty of perjury" clause).

Following the surgery, hospital staff attempted to provide Plaintiff with metal crutches. See id. ¶ 13. However, one of the correction officers, citing a policy of Superintendent Darwin LaClair, told the hospital staff that Plaintiff "could not have metal crutches, and . . . would be given a pair of [permitted] crutches . . . when he arrived at the facility." See id. Plaintiff left the hospital at approximately 3:35 p.m. Id. ¶ 14.

For "reasons unknown to [Plaintiff]," his transport van, upon arriving back at Franklin C. F., was unable to enter the prison complex through the "Truck-Trap, which is the way prisoners are commonly transported and returned." Id. ¶ 22. Had the van been able to proceed through this entrance, it could have dropped Plaintiff off at the medical unit. See id. ¶ 23. Upon realizing that he would not receive pay for waiting until the Truck-Trap accepted the van, Raymond remarked, "We have to get [Plaintiff] to medical fast so we can get the hell out of here." Id. ¶ 17. Harris replied, "[Y]eah, I'm not staying here any longer if I am not getting paid for it." Id. Harris and Raymond then parked the van in Franklin C. F.'s front parking lot and told Plaintiff he had to walk to the prison. See id. ¶ 24.

Before exiting the van, Plaintiff "protest[ed] about being made to walk on [his] recently repaired leg in direct contradiction of the discharge instructions." Id. ¶ 25. In response to Plaintiff's concerns, Raymond stated, "'Come on, you can make it with my help,' and Harris added that Raymond "was giving [Plaintiff] a 'direct order[.]'" Id.

As Plaintiff exited the van, Raymond "did not brace the plaintiff to prevent him from bearing weight on the leg," because the handcuffs on Plaintiff's wrists, which were affixed to a "[b]lack [b]ox" and a "[b]elly [c]hain," prevented Raymond from physically supporting Plaintiff's arm. See id. ¶¶ 26–27 (internal quotation marks omitted). Instead, Raymond "merely 'guided' plaintiff's arm" as Plaintiff stepped down from the van. See id. ¶ 26. Harris and

3

Raymond then "forced the plaintiff to walk on his left leg, <u>without</u> the aid of any crutches, cane or a wheelchair, through the Administration Building, to a holding area, a distance of between 500-1000 feet." Id. ¶ 24 (emphasis in original).

As Plaintiff entered the prison, he "felt something snap, and immediately felt an intense heightened pain, and burning in the surgery area . . . shooting up into his hip and down to his foot." Id. ¶ 30. Once Plaintiff reached a metal bench on the other side of the Administration Building, a non-party correction officer arrived at the scene and "call[ed] medical [to] have them bring a wheelchair for the rest of plaintiff's journey to the medical unit[.]" See id. at ¶ 28.

Since his return from the hospital, Plaintiff "has suffered and continues to suffer constant pain and burning sensations in [his] knee, trouble sleeping, w[a]lking, standing, and performing every day tasks." Id. ¶ 32. Plaintiff has also "developed a mold-like rash covering the skin on his left hip, which was not there prior to the surgery." Id. ¶ 33.

Plaintiff avers that he might not have been harmed had LaClair: (1) instituted a policy that allowed Plaintiff to bring metal crutches into Franklin C. F.; (2) "properly trained" Harris and Raymond on how to handle inmates in Plaintiff's condition; and (3) instituted a policy that paid Harris and Raymond for waiting with Plaintiff until the Truck-Trap accepted the van. See id. at p. 2,[3] ¶¶ 21, 46.

Plaintiff brings medical indifference claims against Harris, Raymond, and LaClair. See Dkt. No. 11 ("April 2020 Order") at 7.

2. *Grievance Process*

The grievance procedure in New York is a three-tiered process. The inmate must first file

---

[3] While the First Amended Complaint is largely organized in numbered paragraphs, some allegations appear in an introductory section prior to the first numbered paragraph.

a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. Id. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). Id. § 701.5(d).

As the magistrate judge notes, in the First Amended Complaint and Response, Plaintiff provides a detailed account of his attempts to file grievances and appeals regarding the incident in question. See R. & R. at 9. As summarized in the Report-Recommendation:

> Plaintiff states that on July 29, 2019, the same day of the incident in question, and while he was in the infirmary, he wrote a grievance on plain paper because he did not have a grievance form. (FAC ¶ 35). Plaintiff states that he placed the grievance in an envelope, addressed it to the IGP Supervisor, sealed the envelope, and gave it to a corrections officer to place in the mail because there is no mail box or "grievance box" in the infirmary. (Id.) Plaintiff states that he wrote the grievance "quickly" because he did not know how many days he would be in the infirmary. (Id.) In the FAC, he states that he kept a copy of the grievance, and he has submitted it as an exhibit to his opposition papers. (FAC ¶ 36 & Dkt. No. 20, Ex. A).
>
> Plaintiff states that he received no response to this grievance. (FAC ¶ 36). Plaintiff states that, on August 14, 2019, he mailed a letter to the IGP Supervisor, along with a copy of the grievance, explaining that he had not received a response, and he was "construing the failure or refusal to respond as a denial and appealing to the Superintendent." (FAC ¶ 37). Plaintiff has attached a copy of this letter to his opposition papers. ([Resp.], Ex. B).
>
> Plaintiff claims that he received no response to his August 14, 2019 letter. (FAC ¶ 38). As a result, plaintiff states that he wrote another letter to the IGP Supervisor at Franklin, dated September 3, 2019. (FAC ¶ 38). Plaintiff states that he attached another copy of the July 29, 2019 grievance to the September 3rd letter. (Id.) Plaintiff claims that in the September 3rd letter, he "explain[ed] that he was construing the subsequent failure or refusal to answer the appeal letter as a denial of same, and appealing to the CORC by said letter." (Id.) Plaintiff has not included a copy of this letter in his opposition papers.

5

> Plaintiff then states that he did not receive a response to the September 3rd letter. (FAC ¶ 39). He claims that on September 27, 2019, he had one of his family members contact the CORC in Albany. (Id.) Plaintiff states that his "family member" spoke to "a Ms. Mary Furcinetti (phonetic)," who was "very nice," and who "looked in the computer," and verified that no grievance, written by plaintiff, had been filed "by the IGP Supervisor," nor was it ever forwarded to the CORC. (FAC ¶ 40).

R. & R. at 9–11.

### B. The Motion, Response, Report-Recommendation, and Objections

*1. Motion*

Defendants move for summary judgment on exhaustion grounds and move to dismiss Plaintiff's claim against LaClair. Regarding exhaustion, they argue that Plaintiff failed to file or appeal any grievance pertaining to the events giving rise to his claims. See Mot. at 6–10. In support of this contention, Defendants offer the following evidence. Inmate Grievance Program ("IGP") Coordinator Judy Tavernier attests that upon a review of all grievances filed at Franklin C.F. between January 1, 2016 the date she signed her declaration, June 10, 2020, she uncovered no grievances filed by Plaintiff. See Tavernier Decl. ¶¶ 10, 15. IGP Assistant Director Rachel Seguin attests that upon a review of all grievance appeals for the current year and the four previous calendar years, she did not uncover any grievance appeal filed by Plaintiff. See Seguin Decl. ¶¶ 8, 12. Attached as an exhibit to her declaration is a computer print-out from the CORC database, dated June 4, 2020, which shows no appeals filed by Plaintiff. See id., Ex. A.

Defendants also argue that LaClair lacks personal involvement in the alleged constitutional violations. See id. at 10–12. Defendants do not address the merits of Plaintiff's claims against Harris or Raymond. See generally id.

*2. Response*

In his Response, Plaintiff argues that the factual contentions that he submitted his grievance and that he submitted his appeals are consistent with Defendants' contentions that they have no record of the grievance or appeals having been filed. See Resp. at 2. Plaintiff asks the Court to infer that prison officials somehow thwarted the filing of his grievance and appeals after Plaintiff attempted to submit them. See id. at 3. On this basis, Plaintiff argues that he should be excused from the exhaustion requirement, as the grievance process was "unavailable." See id. at 2–3; see also Riles v. Buchanan, 656 F. App'x 577, 580 (2d Cir. 2016) ("An administrative procedure is unavailable when . . . 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'") (quoting Ross v. Blake, 136 S.Ct. 1850, 1859–60 (2016)).

Plaintiff presents the following evidence supporting his factual claim that he submitted his grievance and appeals: (1) his sworn complaint, in which he attests that he did so, see FAC FAC ¶¶ 35–40; (2) a copy of his grievance, Resp. Ex. A; and (3) a copy of his August 14, 2019 letter to the IGP Supervisor appealing his grievance to the Superintendent, Resp. Ex. B.

Plaintiff does not address Defendants' arguments regarding the merits of Plaintiff's claims against LaClair. See generally Resp.

*3. Report-Recommendation*

The magistrate judge recommended granting summary judgment on exhaustion grounds. In doing so, the magistrate judge relied on a string of lower court cases in this Circuit doing the same when a plaintiff offered only "bare" or "unsupported" assertions that he submitted a grievance but that it was never filed. See R. & R. at 12–15 (citing Davis v.Grant, No. 15-CV-5359, 2019 WL 498277, at *10 (S.D.N.Y. Feb. 8, 2019) ("Plaintiff's bare assertions that he

7

submitted his grievances but never received a response fall squarely into the category of assertions that courts in the Second Circuit have found do not excuse the exhaustion requirement."); Engles v. Jones, No. 13-CV-6461, 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) ("Plaintiff's unsupported assertion that he filed a grievance but that it was somehow lost or destroyed is insufficient to establish a genuine issue of material fact."); Scott v. Kastner Smith, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) ("[C]ourts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement.") (internal quotation marks omitted); Mims v.Yehl, No. 13-CV-6405, 2014 WL 4715883, at *4 (W.D.N.Y. Sept. 22, 2014) (inmate's "unsupported statement" that he has submitted a grievance is "insufficient at the summary judgment stage"); Veloz v. New York, 339 F. Supp. 2d 505, 516 (S.D.N.Y.2004) ("[An] inmate's unsupported claims that his grievances were lost at the Grievance Committee Office or destroyed by officers . . . fails to excuse [the] inmate from fully grieving remedies[.]") (internal citation omitted)).

Regarding the merits of Plaintiff's claim against LaClair, the magistrate judge determined that Plaintiff's allegations were too vague and conclusory to establish supervisory liability under any of the routes recognized in Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995). See id. at 16–19.

### 4. Objections

In his Objections, Plaintiff reiterates an argument from his Response regarding exhaustion. Namely, he clarifies that, while he does not dispute that his grievance was never filed, he, in fact, gave the grievance to the officer on duty at the infirmary and asked him to submit it: "I gave my grievance to the officer that was working that day. I don't know why it was never filed and why it's not in their system. But I know I put one in." Objs. at 1.

Regarding his claim against LaClair, Plaintiff restates his allegation that in denying

Plaintiff metal crutches, Harris and Raymond were following a facility policy instituted by LaClair. Id. at 1–2.[4]

## III. STANDARDS OF REVIEW

### A. Report-Recommendation

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014). "A [district] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

### B. Summary Judgment

Federal Rule of Civil Procedure 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under

---

[4] Plaintiff also offers arguments relevant to Harris and Raymond's liability. See id. The Court disregards these arguments, because Defendants did not move for dismissal or summary judgment on grounds related to the merits of those claims.

9

the governing law," and a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted.").

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

In attempting to repel a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Hence, "a court's duty in reviewing a motion for summary judgment is 'carefully limited' to finding genuine disputes of fact, 'not to deciding them.'" Macera v. Vill. Bd. of Ilion, No. 16-CV-668, 2019 U.S. Dist. LEXIS 169632, at *26 (N.D.N.Y. Sept. 30, 2019) (Kahn, J.) (quoting Gallo v. Prudential Residential Servs., Ltd.. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).

## IV.     DISCUSSION

As Plaintiff's Objections reiterate arguments he has already presented, the Court reviews the Report-Recommendation for clear error.[5] Having done so, the Court concludes that the magistrate judge committed clear error in his exhaustion analysis, by straying from well-established summary judgment principles.

The magistrate judge placed a greater evidentiary burden on Plaintiff than he is required to meet to survive summary judgment. With respect to the parties' factual disagreement over whether Plaintiff submitted his initial grievance, the Court notes that this dispute essentially boils down to a clash of sworn statements. Plaintiff attests that he gave his grievance to the correction officer on duty at the infirmary on July 29, 2019, FAC ¶ 35, and Defendants submit a sworn statement indicating that a review of their records revealed that no grievance was filed, see Tavernier Decl. ¶¶ 10, 15. To the extent that these statements are in contradiction, the Court cannot resolve this contradiction at the summary judgment stage, because the Court is prohibited from making credibility determinations. See, e.g., Gen. Elec. Capital Corp. v. NET Transportation, Inc., No. 04-CV-316, 2006 WL 8447262, at *3 (D. Conn. May 4, 2006) ("In ruling on summary judgment, the Court cannot credit averments made in plaintiff's affidavit over that of the defendants."); Lupyan v. Corinthian Colleges, Inc., 761 F.3d 314, 320-321 (3d Cir. 2014) ("[A] single, non-conclusory affidavit or witness's testimony, when based on personal

---

[5] Since Plaintiff did not respond to Defendants' motion to dismiss Plaintiff's claims against LaClair, Plaintiff's arguments with respect to that claim could be construed, alternatively, as "new" arguments improperly introduced in objections. See Ross v. Koenigsmann, No. 14-CV-1321, 2016 WL 5408163, at *2 (N.D.N.Y. Sept. 28, 2016) ("[A] district court will ordinarily refuse to consider an argument that could have been, but was not, presented to the magistrate judge in the first instance."). Either way, the Court would review this aspect of the Report-Recommendation for clear error. See Barnes, 2013 WL 1121353, at *1.

knowledge and directed at a material issue, is sufficient to defeat summary judgment. This remains true even if the affidavit is 'self-serving.'") (internal citations omitted); Curry v. City of Syracuse, 316 F.3d 324, 333 (2d Cir. 2003) (noting that "credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment").

The magistrate judge cites a number of cases in which courts granted summary judgment when a plaintiff offered only "bare" or "unsupported" assertions that he submitted a grievance but that it was never filed. See R. & R. at 12–15. But Plaintiff's factual contention that he gave his grievance to a correction officer *is* supported—by a sworn statement based on personal knowledge. See *supra* note 2; Fed. R. Civ. P. 56(c)(4). This is sufficient in itself to enable Plaintiff to survive summary judgment. The Court notes, however, that Plaintiff's factual contention is also supported by a dated, handwritten copy of his grievance. See Resp., Ex. A. The magistrate judge apparently determined that this piece of evidence should be discounted in determining whether Plaintiff meets his burden on summary judgment, citing one other case in this District for support. See R. & R. at 13 (citing Means v. Olmstead, No. 17-CV-746, 2019 WL 4395289, at *7 (N.D.N.Y. June 3, 2019), report and recommendation adopted, 2019 WL 3451127, at *2 (N.D.N.Y. July 31, 2019)). But Means offers no reasoning or legal authorities to support this legal conclusion, see id., which appears to entail the improper weighing of evidence and assessment of credibility, see Curry, 316 F.3d at 333. Especially given that Defendants in this case have not even addressed the authenticity of Plaintiff's copy of his grievance, it is improper for the Court to discount Plaintiff's claim that this is a genuine, contemporaneous copy.

The magistrate judge appears to have applied a burden-shifting framework that courts in this District generally employ in adjudicating PLRA exhaustion at the summary judgment stage.

As Judge Suddaby has explained:

> [T]he defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. See, e.g., Howard v. Goord, No. 98-CV-7471, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999). However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable. Smith v. Kelly, 985 F.Supp.2d 275, 284 (N.D.N.Y. 2013). "As a result, practically speaking, while the burden on this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it." Id. . . . [W]hile the burden of production may shift to a plaintiff when a court considers whether the grievance process was unavailable, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant.[6]

Coleman v. Nolan, No. 15-CV-40, 2018 WL 4732778, at *4 (N.D.N.Y. Oct. 2, 2018) (other internal quotation marks omitted).

This burden-shifting framework does not ultimately mandate a greater evidentiary showing from Plaintiff than would otherwise be required at summary judgment. A presumption is not a form of super-evidence that heightens the opposing party's evidentiary burden in rebuttal. Indeed, a presumption is not evidence at all, but rather merely "an assumption of fact resulting from a rule of law which requires such fact to be assumed from another fact or group of facts found or otherwise established in the action." 21B Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5124 (2d ed. 2005); see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 n.10 (1981) (describing presumption as "legally mandatory

---

[6] Citing Bailey v. Fortier, No. 09-CV-0742, 2012 WL 6935254, at *5-6 (N.D.N.Y. Oct. 4, 2012), report and recommendation adopted, 2013 WL 310306 (N.D.N.Y. Jan. 25, 2013); Nelson v. Plumley, No. 12-CV-422, 2015 WL 4326762, at *7-8 (N.D.N.Y. July 14, 2015), report and recommendation adopted, 2013 WL 1305338 (N.D.N.Y. Mar. 18, 2013).

inference"); Emhart Industries, Inc. v. Universal Instruments Corp., No. 89-CV-6, 1992 U.S. Dist. LEXIS 13458, at *10 (N.D.N.Y. June 22, 1992) ("[A] presumption is not evidence.") (quoting A.C. Aukerman Co. v. R.L. Chaides Construction Co., 960 F.2d 1020, 1037–38 (1992)). A presumption's "only effect is to require the party contesting it to produce enough evidence substantiating the presumed fact's absence to withstand a motion for summary judgment[.]" Lupyan, 761 F.3d at 320; see also ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 149 (2d Cir. 2007) ("Courts and commentators are in general agreement that proffered evidence is sufficient to rebut a presumption as long as the evidence could support a reasonable jury finding of the nonexistence of the presumed fact.") (collecting authorities) (internal quotation marks omitted). "[A] presumption vanishes upon the introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact." Punchgini, Inc., 482 F.3d at 148 (internal quotation marks omitted).

In other words, once Defendants introduced evidence that they generally operated a functioning grievance system, see Seguin Decl. ¶¶ 5–6, Plaintiff could not have survived summary judgment simply by pointing to Defendants' failure to introduce evidence that this process was available to him specifically. Rather, in order to make the presumption of availability "vanish," Plaintiff had to produce competent evidence supporting unavailability. But once he did so, by submitting a sworn statement that he gave his grievance to a correction officer, he was not then required to produce a greater quantum of evidence than normally required of a non-movant at the summary judgment stage. Since a sworn statement based on personal knowledge is generally sufficient when opposed only by a movant's conflicting sworn statement, Plaintiff's evidence is sufficient here.

Moreover, all of the Court's foregoing analysis rests on an assumption that is

unjustifiably charitable to Defendants—namely, that there is a conflict between Plaintiff's sworn statement that he gave his grievance to a correction officer for submission and Defendants' statement that the grievance was never filed. As Plaintiff correctly argues, these competing sworn statements are not necessarily inconsistent. See Resp. at 2–3; Objs. at 1. Since the Court is required to draw reasonable inferences in Plaintiff's favor, the Court must infer that the grievance was never filed because prison authorities did not file it, not because Plaintiff did not attempt to submit it. See Zulu v. Barnhart, No. 16-CV-1408, 2019 WL 2997226, at *13 (N.D.N.Y. Apr. 22, 2019) ("Defendants' evidence is largely consistent with plaintiff's claim that, for whatever reason, the timely grievances that he attempted to submit while confined to the SHU at Marcy were not filed. The absence of any official records of plaintiff's initial attempts to grieve the incident comports with plaintiff's assertion that once he handed a grievance through the feed-up hatch in the SHU, it was out of his possession and it was not filed."), report and recommendation adopted, No. 16-CV-1408, 2019 WL 2150628 (N.D.N.Y. May 17, 2019). Defendants have, thus, failed to demonstrate the absence of a material factual dispute.

The Court reaches the same conclusion with respect to Plaintiff's appeals. Plaintiff attests that, on August 14, 2019, he mailed a letter to the IGP supervisor, along with a copy of his grievance, explaining that he had not received a response and that he was "construing the failure or refusal to respond as a denial and appealing to the Superintendent." FAC ¶ 37. Plaintiff has submitted a copy of this letter. Resp., Ex. B. Plaintiff additionally attests that he wrote another letter to the IGP Supervisor on September 3, 2019, explaining "that he was construing the subsequent failure or refusal to answer the appeal letter as a denial of same, and appealing to the CORC by said letter." Id. ¶ 38. Plaintiff has not submitted a copy of the September 3, 2019 letter. Seguin attests that upon a review of all grievance appeals for the current year and the four

15

previous calendar years, she did not uncover any grievance appeals filed by Plaintiff. See Seguin Decl. ¶¶ 8, 12. Attached as an exhibit to her declaration is a computer print-out from the CORC database, dated June 4, 2020, which shows no appeals to the CORC filed by Plaintiff. See id., Ex. A.

Here, there is again a clash of sworn statements: Plaintiff attests that he attempted to submit the appeals, and Defendants attest that they were never filed. As discussed, the Court cannot credit Defendants' sworn statements over Plaintiff's. See Joshi v. Ashcroft, 389 F.3d 732, 735 (7th Cir. 2004) ("Most letters are delivered, but some aren't, and so if there is a sworn denial of receipt the trier of fact has to weigh the credibility of the denial in light of the fact that the vast majority of letters are delivered and that the intended recipient has a strong incentive to lie.").[7] Defendants additionally present documentary evidence that Plaintiff's appeals were not filed, namely the CORC print-out. See Seguin Decl., Ex. A. Importantly, while Defendants state in conclusory fashion that they infallibly maintain records of all grievances and appeals, they do not specifically represent that the CORC print-out is a log of all incoming mail, or describe Defendants' mail-processing practices in a manner that would support an inference that the

---

[7] In a variety of legal contexts, Courts adjudicate disputes over whether a letter was sent or received by employing the "mailbox rule," according to which "[a] rebuttable presumption of receipt [arises] on evidence that a properly addressed piece of mail is placed in the care of the postal service." Witt v. Roadway Express, 136 F.3d 1424, 1429–30 (10th Cir. 1998); see also Godfrey v. United States, 997 F.2d 335, 338 (7th Cir. 1993); Anderson v. United States, 966 F.2d 487, 491 (9th Cir. 1992). Plaintiff's sworn statement that he mailed the letters would establish his entitlement to this presumption, which Defendants would have the burden to rebut. See, e.g., United States v. Ekong, 518 F.3d 285, 287 (5th Cir. 2006) ("A sworn statement is credible evidence of mailing for the purposes of the mailbox rule."); Schikore v. BankAmerica Supplemental Ret. Plan, 269 F.3d 956, 964 (9th Cir. 2001) (same); Witt, 136 F.3d at 1430 ("Because the presumption is rebuttable . . . evidence denying receipt creates a credibility issue that must be resolved by the trier of fact.") (citing Rosenthal v. Walker, 111 U.S. 185, 193–94 (1884); Anderson, 966 F.2d at 491–92; 9 Wigmore, Evidence § 2519).

absence of a record of Plaintiff's appeals being filed reliably indicates non-receipt of his letters. See Seguin Decl. ¶ 8 ("[T]he CORC computer database contains records of appeals of grievances received from facility Inmate Grievance Program offices[.]"); Tavernier Decl. ¶ 10 ("All documents . . . related to a particular grievance . . . are stored in the Franklin grievance office in the regular course of that office's activities as they are created or received."); cf. Lupyan, 761 F.3d at 322 ("When the intended recipient is a commercial or legal entity, it may be routine business practice to log incoming mail. In such cases, the absence of an entry in a mail log near the time that mail would likely have arrived, can be used to establish that mail was not received."); Guerra v. CONRAIL, 936 F.3d 124, 137 (3d Cir. 2019) ("OSHA's denial of receipt is strengthened by its practice of tracking correspondence and its unavailing search for a trace of Guerra's letter."). As before, there is no necessary inconsistency between Plaintiff's claim that he mailed the appeals and Defendants' claim that they were never filed; and the Court must grant Plaintiff the favorable inference that his grievance was sent and received, but not filed, for reasons out of his control.[8]

Accordingly, Defendants have failed to demonstrate the absence of a material factual dispute as to whether the grievance process at Franklin C.F. was "unavailable" due to the machinations or misrepresentations of prison officials who inhibited the filing of Plaintiff's submissions. See Riles, 656 F. App'x at 580; see also Gill v. Frawley, No. 02-CV-1380, 2006 U.S. Dist. LEXIS 101694, at *44 (N.D.N.Y. May 9, 2006) (noting that "[s]ome courts have

---

[8] Defendants also argued that, even assuming *arguendo* that Plaintiff had properly filed his grievance and appeals, his claims should be denied for failure to exhaust, because he did not file his complaint in this action after waiting thirty days from his final appeal. See Reply at 2–3. In addition to being improperly raised for the first time in a reply, this argument is meritless, because the complaint was filed on October 4, 2019, Docket, which is more than thirty days after September 3, 2019, the date on which Plaintiff attests he filed his final appeal, FAC ¶ 38.

suggested that an inmate has exercised a reasonable effort to exhaust his administrative remedies when he has tried to properly file a grievance and that grievance has been lost or destroyed by a prison official," and collecting cases); Fann v. Graham, No. 15-CV- 1339, 2018 WL 1399331, at *6 (N.D.N.Y. Jan. 11, 2018) ("Viewing the facts in the light most favorable to plaintiff, the record suggests that plaintiff's grievances were submitted, but were unfiled and unanswered, creating an issue of fact as to whether the grievance process was available and whether plaintiff attempted to exhaust his administrative remedies[.]"), report and recommendation adopted, No. 15-CV-1339, 2018 WL 1399340 (N.D.N.Y. Mar. 19, 2018); Thaxton v. Simmons, No. 10-CV-1318, 2013 WL 4806457, at *4 (N.D.N.Y. Sept. 9, 2013) ("[A] question of fact exists as to whether [p]laintiff never filed his initial grievance on April 29, as [d]efendants claim, or that, as [p]laintiff claims, he filed a timely grievance that was lost or tampered with by [d]efendants. Such credibility assessments are to be resolved by a trier of fact.").

In order to determine whether Plaintiff properly exhausted administrative remedies, the Court must hold a hearing, at which a fact-finder can assess the credibility of witnesses and the relative weight of the evidence the parties present. See, e.g., Woodward v. Lytle, No. 16-CV-1174, 2019 WL 2527342, at *8 (N.D.N.Y. May 24, 2019), report and recommendation adopted, No. 16-CV-1174, 2019 WL 2524756 (N.D.N.Y. June 19, 2019) (issuing a decision on exhaustion subsequent to a hearing); see also Messa v. Goord, 652 F.3d 305, 310 (2d Cir. 2011) (affirming the constitutionality of adjudicating PLRA exhaustion issues by bench trial).

With respect to the magistrate judge's conclusion that the claim against LaClair should be dismissed due to his lack of personal involvement, the Court concurs and finds no clear error.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 22) is **REJECTED in part and ADOPTED in part**. Defendant's Motion (Dkt. No. 17) is denied as to exhaustion and granted as to Plaintiff's Eighth Amendment claim against LaClair; and it is further

**ORDERED**, that the Clerk **TERMINATE** LaClair from the docket; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   February 22, 2021
         Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge