# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

JERMELL MCLEAN,

                       Plaintiff,

                                       9:19-CV-1227 (BKS/ATB)

     v.

THEODORE HARRIS and
TODD RAYMOND,

                       Defendants.

---

BENJAMIN JOHN WISHER, ESQ., for Plaintiff
LAUREN EVERSLEY and STEVE NGUYEN, Ass't Attorneys General, for Defendants

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT AND RECOMMENDATION

The court submits this Report and Recommendation to District Judge Brenda K. Sannes, following an exhaustion hearing that I conducted, pursuant to a referral of the matter by Senior District Judge Lawrence E. Kahn, who was then assigned the case.[1] (*See* Dkt. No. 27; 12/21/2021 & 1/6/2021 Text Minute Entries). For the reasons set forth below, this court finds that the plaintiff's testimony regarding his efforts to pursue a grievance related to the claims in this action was not credible, and recommends that his action be dismissed for failure to exhaust administrative remedies.

---

[1] This case was re-assigned to Judge Sannes on October 20, 2021. (Dkt. No. 39).

## I.    Procedural History

On October 4, 2019, plaintiff/inmate Jermell McLean filed this civil rights action pursuant to 42 U.S.C. § 1983.  He alleged that, on July 29th of that year, several individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS") at the Franklin Correctional Facility ("Franklin"), harmed plaintiff, with deliberate indifference to his medical needs.  (Compl., Dkt. No. 1).  After an initial review of plaintiff's complaint, Judge Kahn allowed plaintiff's medical indifference claim to go forward against defendant "John Doe #1," and directed the New York Attorney General to produce certain information from which the John Doe defendant might be identified by name.  (*See* 11/7/2019 Decision and Order at 12-13, Dkt. No. 6).[2]

On December 5, 2019, defense counsel disclosed prison records that identified, by name, the two correction officers who transported plaintiff from a local hospital on July 29, 2019, following his knee surgery.  (Dkt. No. 7)  Plaintiff thereafter, on January 27, 2020, filed an amended complaint, naming, as defendants, the Franklin Superintendent and the two transport officers, who allegedly forced plaintiff to walk some distance without crutches, shortly after his surgery, contrary to the direction of the treating medical providers.  (Dkt. No. 9)  Plaintiff's amended complaint included, for the first time, detailed allegations about his prior, unsuccessful efforts to pursue a grievance at Franklin regarding the July 29th incident.  (*Id*. at 8-9 ("Exhaustion of

---

[2] Claims against the Superintendent of Franklin and "John Doe #2" were dismissed by Judge Kahn, without prejudice.  *Id*.

Administrative Remedies")).  On April 7, 2020, Judge Kahn ruled that plaintiff's amended complaint could go forward, and ordered all defendants to respond, following service of process upon them.  (Dkt. No. 11).

On June 11, 2020, the defendants moved for summary judgment based, in part, on plaintiff's alleged failure to exhaust his administrative remedies.  (Dkt. No. 50).  On August 5, 2020, this court issued a Report-Recommendation recommending that plaintiff's action be dismissed for failure to exhaust or, in the alternative, recommending dismissal of Superintendent LaClair based on his lack of personal involvement.  (Dkt. No. 22).  By a Memorandum-Decision and Order dated February 22, 2021, Judge Kahn rejected my recommendations, in part, and ordered a hearing to determine whether plaintiff had exhausted his administrative remedies.  (Dkt. No. 25 at 18-19).  Judge Kahn did dismiss plaintiff's claim against Superintendent LaClair.  (*Id.*)

After Judge Kahn referred the matter to me, I deferred scheduling the exhaustion hearing to allow plaintiff the opportunity to conduct discovery with respect to the exhaustion issues before facing an evidentiary hearing.  (Dkt. No. 28).  On September 22, 2021, following the discovery period and a telephone conference with the parties, I appointed pro bono counsel to represent plaintiff at the exhaustion hearing.  (Dkt. No. 35).  The exhaustion hearing was scheduled to commence on December 1st.  At the request of plaintiff's pro bono counsel, I ordered defense counsel and DOCCS to provide, to the extent available, some additional information, including records that might identify potential inmate witnesses for plaintiff.  The hearing was adjourned because one of the lawyers was exposed to COVID-19, and the parties later agreed that

one defense witness could testify remotely on a different date, without the plaintiff's participation, because the witness was not available on the rescheduled hearing date.

I started the evidentiary exhaustion hearing, in person in Albany, on December 21, 2021, and completed the hearing via a video conference on January 6, 2022. (12/21/21 Transcript ("Tr."), Dkt. No. 59; 1/6/22 Tr., Dkt. No. 60).  The witnesses on December 21st were Rachel Seguin, the DOCCS Assistant Director for the Incarcerated Grievance Program ("IGP"); Ryan Ratliff, a correction Sergeant at Franklin familiar with the process for submission of inmate grievances from the infirmary; and plaintiff. On January 6th, Donna Wilcox, the current IGP Supervisor at Franklin, testified about the grievance process at that facility.  The court admitted several exhibits and advised the parties that I would consider plaintiff's prior submissions and deposition testimony in this case, but not an affidavit in support of the defense summary judgment motion of Judy Tavernier, the IGP Supervisor at Franklin in 2019, who retired approximately one year before the hearing.  (12/21/21 Tr. at 6-9, 74-76; 1/6/22 Tr. at 50-51).

## II.    **Exhaustion of Administrative Remedies**

### A.    **General Legal Standards**

The Prison Litigation Reform Act, ("PLRA"), 42 U.S.C. §1997e(a), requires an inmate to exhaust all available administrative remedies prior to bringing a federal civil rights action.  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and regardless of the subject matter of the claim.  *See Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004) (citing *Porter v. Nussle,* 534 U.S. 516, 532 (2002).  Inmates must exhaust their

4

administrative remedies even if they are seeking only money damages that are not available in prison administrative proceedings. *Id.* at 675.

The failure to exhaust is an affirmative defense that must be raised by the defendants. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004). As an affirmative defense, it is the defendants' burden to establish that plaintiff failed to meet the exhaustion requirements. *See, e.g., Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *Jones*, 549 U.S. at 218-19 (citing *Woodford v. Ngo*, 548 U.S. 81 (2006)). In *Woodford*, the Court held that "proper" exhaustion means that the inmate must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a prerequisite to bringing suit in federal court. 548 U.S. at 90-103.

The grievance procedure in New York is a three-tiered process. The inmate must first file a grievance with the Inmate Grievance Resolution Committee ("IGRC"). N.Y. Comp. Codes R. & Regs., tit. 7 §§ 701.5(a)(1) and (b). An adverse decision of the IGRC may be appealed to the Superintendent of the Facility. *Id*. § 701.5(c). Adverse decisions at the Superintendent's level may be appealed to the Central Office Review Committee ("CORC"). *Id*. § 701.5(d). The court also notes that the regulations governing the Incarcerated Grievance Program ("IGP") encourage the inmate to "resolve his/her complaints through the guidance and counseling unit, the program area

5

directly affected, or other existing channels (informal or formal) prior to submitting a grievance." *Id.* § 701.3(a) (Inmate's Responsibility).  There is also an expedited procedure for complaints raising bona fide issues of harassment by staff, which bypasses the IGRC, and initially refers the grievance to the facility superintendent or his designee for prompt review, investigation, and decision.  *Id*. § 701.8.

Until recently, the Second Circuit utilized a three-part inquiry to determine whether an inmate had properly exhausted his administrative remedies.  *See Hemphill v. State of New York*, 380 F.3d 680, 686 (2d Cir. 2004).  The *Hemphill* inquiry asked (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether "special circumstances" justify the inmate's failure to comply with the exhaustion requirement.  *Id.*

However, the Supreme Court has now made clear that courts may not excuse a prisoner's failure to exhaust because of "special circumstances."  *Ross v. Blake*, 578 U.S. 632, 640, 136 S. Ct. 1850, 1857 (2016).  "'[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.'" *Riles v. Buchanan*, 656 F. App'x 577, 580 (2d Cir. Sept. 1, 2016) (quoting *Ross*, 136 S. Ct. at 1857).  Although *Ross* did away with the "special circumstances" exception, the other two factors in *Hemphill*–availability and estoppel–are still valid.  The court in *Ross* referred to "availability" as a "textual exception" to mandatory exhaustion, and "estoppel" has become one of the three factors in determining availability.  *Ross*, 578 U.S. at 642, 136 S. Ct. at 1858.  Courts evaluating whether an inmate has exhausted his

6

or her administrative remedies must focus on whether those remedies were "available" to the inmate. *Id.; see also Riles*, 656 F. App'x at 580.  An administrative procedure is "unavailable" when

> (1) "it operates a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) it is "so opaque that [it] becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Riles, supra* (quoting *Ross*, 136 S. Ct. at 1859-60).

In *Ross*, the Supreme Court gave examples of the circumstances under which each of the above would apply.  *Ross*, 578 U.S. at 643-44,136 S. Ct. at 1859-60.  The first circumstance listed above involves a case in which the relevant "administrative procedure" lacks the authority to provide "any" relief.  The second example is when the administrative procedure "exists," but is so complicated or "opaque" that no ordinary prisoner could "discern or navigate it."  Finally, administrative remedies are not available if prison administrators prevent inmates from taking advantage of the grievance process by misleading or threatening them, preventing their use of the administrative procedure.  *Id.*

In *Williams v. Priatno*, 829 F.3d 118, 123-27 (2d Cir. 2016), the Second Circuit considered whether administrative remedies had been "actually available" to the plaintiff under *Ross*, after the district court granted the defendants' motion to dismiss for failure to exhaust.  The plaintiff alleged that, while housed in the special housing unit ("SHU"), he drafted a grievance that he delivered to a correction officer to forward

to the grievance office on his behalf. *Id*. at 120-121. Approximately two weeks later, the plaintiff was transferred to a different facility. *Id*. at 121. He never received a response to his grievance and alleged that it was never filed by the officer to whom he had given it. It was undisputed that plaintiff never appealed the grievance. *Id*.

The defendants in *Williams* argued that even if the grievance was never filed, the plaintiff was required to appeal it and complete the grievance process. *Id*. at 124. The defendants relied on a DOCCS regulation that provided that "an inmate may appeal a grievance 'to the next step' if he does not receive a timely response." *Id*. (quoting N.Y. Comp. Codes R. & Regs. tit. 7, § 701.6(g)(2)). The Second Circuit rejected this argument and held that, for an inmate in the plaintiff's situation, the regulatory scheme was so "opaque" and "confusing" as to be practically unavailable. *Id*. The Second Circuit found that DOCCS regulations "only contemplate appeals of grievances that [have been] actually filed . . . [and] give no guidance whatsoever to an inmate whose grievance was never filed." *Id*. Thus, *Williams* holds that "the process to appeal an unfiled and unanswered grievance is prohibitively opaque, such that no inmate could actually make use of it." *Id*. at 126.[3] *See also Medina v. Napoli*, 725 F. App'x 51, 53-54 (2d Cir. 2018) (following *Williams* in the context of a summary judgment motion).

## B.    Exhaustion Hearings

The Second Circuit has ruled that a plaintiff in a lawsuit governed by PLRA is not entitled to a jury trial relating to his exhaustion of administrative remedies. *Messa*

---

[3] My summary of *Williams* tracks that of Magistrate Judge Stewart in *Berman v. Durkin*, No. 9:13-CV-136 (LEK/DJS), 2017 WL 1215814, at *8 (N.D.N.Y. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 1207834 (N.D.N.Y. Mar. 31, 2017).

*v. Goord*, 652 F.3d 305, 308-10 (2d Cir. 2011).  Rather, PLRA exhaustion is a matter of judicial administration, and the court, not a jury, determines factual disputes regarding an inmate's alleged failure to exhaust.  *Id*. at 308-09.

As noted above, the defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action.  *See, e.g., Howard v. Goord*, No. 98-CV-7471, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).  However, once a defendant has produced reliable evidence that such remedies were generally available, and the plaintiff nevertheless failed to exhaust those remedies, the plaintiff must then counter the defendant's proof by showing that, as to him or her, the remedy was unavailable.  *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) (Suddaby, J.).  "As a result, practically speaking, while the burden on this affirmative defense remains at all times on the defendant, the plaintiff may sometimes have to adduce evidence in order to defeat it."  *Id*.  While there is some ambiguity in the district court cases in the Second Circuit on this point, I agree with Magistrate Judge Peebles' cogent analysis that, while "the burden of production" may shift to a plaintiff when a court considers whether the grievance process was unavailable, the ultimate burden of proof, by a preponderance of the evidence, with respect to the exhaustion defense remains, at all times, with the defendant.  *See, e.g.*, *Grant v. Kopp*, No. 9:17-CV-1224 (GLS/DEP), 2019 WL 368378, at *4, 8 (N.D.N.Y. Jan. 3, 2019), *report and recommendation adopted*, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019).

## III.  **Factual Issues**

The defendants contend that they have established that the grievance process was available to plaintiff at Franklin in 2019.  The defense further argues that the record keeping system at DOCCS and at Franklin is reliable, and that there is no record of plaintiff submitting a grievance, an appeal of a grievance, or any correspondence relating to the July 29, 2019 incident.

Plaintiff argues that he has met his burden of production to establish that he attempted to submit a grievance relating to the July 29, 2019 incident, pursuant to DOCCS and facility procedures, before the applicable deadline, but that the grievance was never filed by the Franklin IGP.  He contends that the defense did not sustain its burden of disproving his allegations, and that, pursuant to *Williams v. Priatno*, the grievance process was not "available" to him.  Accordingly, he takes the position that he should be permitted to proceed to a trial on the merits on his civil rights claims.

The defense counters that plaintiff's testimony is not credible, based on the fact that three separate submissions he claimed to have submitted to the IGP at Franklin never arrived and for other reasons, discussed further below.  Based upon all of the evidence considered by the court, including my observations of the witnesses, I conclude that plaintiff's testimony regarding his alleged efforts to pursue the grievance process with regard to the July 29, 2019 incident was not credible.  Accordingly, I find that the defense sustained its burden of proving that plaintiff did not exhaust administrative remedies that were available to him, and recommend that this case be dismissed.

### A.    Established Facts

The hearing did not reflect any significant disagreement between the parties as to the general availability of the grievance process at Franklin and other DOCCS facilities.  Implicitly acknowledging the impact of *Williams v. Priatno* and its progeny in the Second Circuit, Assistant Director Seguin testified that the DOCCS Directive relating to the grievance process–# 4040–did not provide clear guidance to inmates on how to proceed if they submitted a grievance that was not filed or assigned a grievance number by the facility IGP.  (12/21/21 Tr. at 46-47, 59 (Seguin testimony); *id.* at 91-92 (plaintiff's testimony)).  Ms. Seguin also conceded that DOCCS Directive 4040 did not explain the specific process for physically submitting a grievance at a particular facility, but noted that the IGP staff at each facility explains the local process to inmates during an orientation process.  (12/21/21 Tr. at 33-34, 36-37).  As discussed below, plaintiff's alleged efforts to pursue his grievance at Franklin, were consistent with procedures for submitting grievances and related correspondence at Franklin.

The court admitted in evidence, without objection, defendants' Exhibit 1– DOCCS Directive 4040, which sets forth DOCCS policies and procedures relating to the inmate grievance process–(12/21/21 Tr. at 19); (2) Exhibit 2–a printout reflecting that DOCCS' Central Office Review Committee ("CORC") had no record of plaintiff appealing a grievance in 2019–(12/21/21 Tr. at 30); and Exhibit 4–a screen shot reflecting the IGP office at Franklin had no record of plaintiff filing a grievance in 2019–(1/6/22 Tr. at 136).  Plaintiff's Exhibit 1–the grievance he claimed to submit on July 29, 2021 while in the infirmary–was admitted, with the defense noting that it

11

disputed when the document was created.  (12/21/21 Tr. at 81-82).  Plaintiff's Exhibit

2–a letter plaintiff claims to have submitted to IGP Supervisor Tavernier on August 14,

2019–was addressed at length during plaintiff's hearing testimony, but was not offered

in evidence, clearly by oversight.  The court will consider that crucial exhibit, with the

understanding that, again, the defense disputes when that document was created.  I

have also considered plaintiff's first amended complaint (Dkt. No. 9); plaintiff's

deposition transcript, which was submitted to the court before the hearing, but not

marked as an exhibit;[4] and plaintiff's response (Dkt. No. 20-1) to defendants' statement

of material facts in support of their summary judgment motion (Dkt. No. 17-2).

###   B.    Plaintiff's Version of Disputed Facts

At the exhaustion hearing, the court directed plaintiff's counsel not to elicit

testimony about the incident on July 29, 2019 that is the subject of plaintiff's claim

(12/21/21 Tr. at 80), but I will briefly provide some context based on plaintiff's

allegations in the amended complaint.  After being returned from a local hospital

following knee surgery, the defendant transport officers, upset because they were

working past the end of their shift with no prospect of receiving overtime pay, made

plaintiff walk from the parking lot into and through the Administration Building at

Franklin, without crutches or other support, contrary to the instructions of plaintiff's

medical providers.  (Am. Compl. ¶¶ 13, 16-17, 19-20, 24-28).  While walking, plaintiff

felt something snap and experienced intense pain and burning near the site of his knee

surgery, which symptoms persisted for some time.  (*Id*. ¶¶ 30, 32).  Another officer

---

[4] Plaintiff's prior deposition is attached as an exhibit to the Report and Recommendation.

intervened and, upon learning of plaintiff's situation, ordered a wheelchair to take plaintiff to the facility infirmary.  (*Id*. ¶ 28).

Plaintiff testified, at the hearing, that he explained his situation to the inmate porter in the infirmary, who suggested that plaintiff write out a grievance and gave him paper and a pencil.  (12/21/21 Tr. at 82).  The porter purportedly advised plaintiff to write two copies of the grievance because "[a] lot of grievances don't make it out of the medical units."  (*Id*.)  Plaintiff identified Plaintiff's Exhibit 1 as a copy of one version of the four-page grievances he wrote out in the infirmary during the evening of July 29th which, "word for word," tracked the other version of the grievance, which he wrote out and handed, in an envelope, to the correction officer in the infirmary, for delivery to the IGP Supervisor at Franklin.  (12/21/21 Tr. at 82-84, 98).

Plaintiff testified that, after not receiving any response to his grievance, he asked another inmate on his unit "what's the next step to take."  At the inmate's suggestion, plaintiff typed two identical copies of a letter to the IGP Supervisor at Franklin, dated August 14, 2019. (12/21/21 Tr. at 85; Pl.'s Ex. 2).  Having been returned to general population by then, plaintiff placed, in a facility mail box, an envelope containing one copy of the typed letter with a photocopy, which he made in the facility library, of the version of the grievance that he had kept on July 29th.  (12/21/21 Tr. at 86-90).  Plaintiff's letter to then-IGP Supervisor Judy Tavernier explained that he had tried to submit a grievance relating to the July 29th incident when he was in the infirmary but, given that "[t]he IGRC failed or refused to answer[,]" he was submitting his letter in order to appeal to the facility Superintendent.  (Pl.'s Ex. 2).

Plaintiff testified that he received no response to his August 14 letter. One unnamed inmate with whom plaintiff consulted advised that he had once filed a grievance that was never acknowledged.[5] An inmate in the law library told plaintiff that he could not appeal to CORC if his grievance was never filed or assigned a number by the IGP. (12/21/21 Tr. at 90-91). Even though he purportedly understood that he could not appeal his unacknowledged grievance to CORC, plaintiff testified that he directed a third letter to the IGP supervisor at Franklin, and later had his daughter contact DOCCS in Albany to determined if they had any record of a grievance from plaintiff. (*Id*. at 91-95).

Plaintiff's prior statements and his hearing testimony about his third letter regarding the July 29th incident were unclear and inconsistent. In his amended complaint, plaintiff alleged:

> On or about September 3, 2019, after having received no response from the August 14, 2019 letter, and after twenty (20) days had passed, plaintiff wrote another letter to the IGP Supervisor, attaching another copy of the July 29, 2019 grievance and the August 14, 2019 letter, and explaining that he was construing the subsequent failure or refusal to answer the appeal letter as a denial of same, and appealing to the CORC by said letter.

(Am. Compl. ¶ 38). However, in his June 11, 2020, response to defendants' statement of material facts in support of their summary judgment motion, plaintiff admitted paragraph 11, which stated that "Plaintiff did not appeal any alleged grievance to CORC prior to the commencement of this action." (Dkt. No. 17-2 at 2, ¶ 11; Dkt. No.

---

[5] Plaintiff later testified that an inmate on the IGRC also told plaintiff that there were instances of grievances submitted to the IGP that were never filed. (12/21/21 Tr. at 96-97).

20-1 at 2, ¶ 11).

During his May 27, 2021 deposition, plaintiff first stated that he did not file any other documents relating to his claims after the August 14, 2019 letter to the IGP Supervisor at Franklin. (Pl.'s Dep. at 64-65). After being asked about his daughter's purported efforts to call DOCCS in Albany about his grievance, plaintiff testified "I had sent them another letter, which you all don't have no file of, because . . . I couldn't find it . . ." (*Id.* at 66-67). Plaintiff then testified that he submitted the letter "sometime" in September 2019, asking when he would get a response to his grievance, and mentioning appealing his grievance "to the next level." (*Id.* at 68-69, 70).

During the exhaustion hearing, plaintiff initially acknowledged writing the third letter to the IGP Supervisor at Franklin, but stated he had searched for it and could not find it. (12/21/21 Tr. at 94). On cross-examination, plaintiff confirmed that he submitted the third letter to the IGP supervisor by placing it in the facility mailbox, but that he misplaced the copy he made of that letter in the law library, when he moved from one residential "cube" to another. (*Id.* at 100-03, 108-09). On redirect, the plaintiff testified that he never made a xerox copy of the third letter and then stated: "I never sent the third letter to nobody because I couldn't find it." (*Id.* at 111-13). Finally, plaintiff testified that his allegations in the amended complaint regarding his effort to exhaust his administrative remedies were true and accurate and that his deposition testimony was consistent with his hearing testimony. (*Id.* at 115, 116-17).

After his daughter allegedly advised plaintiff that DOCCS in Albany had no record of a grievance from him, plaintiff consulted with the inmate in the library who

15

was on the IGRC.  Based on the inmate's advice, plaintiff filed the complaint to initiate this action.  (12/21/21 Tr. at 96).

During cross-examination plaintiff conceded that he had a pretty good understanding of the grievance process in 2019, as explained in facility orientation. (12/21/21 Tr. at 104-05).  He denied having "any issues" with the correction officer in the infirmary or, in general with the officers at Franklin.  (*Id*. at 105).  Plaintiff also acknowledged that did not have any other issues with the internal mail at Franklin during the relevant time period.  (*Id*. at 105-06).

## C.    The Defense Version of Disputed Facts

Rachel Seguin oversees the entire DOCCS IGP program and maintains records of the CORC relating to grievance appeals.  (12/21/21 Tr. at 11).  She testified about the grievance process at DOCCS generally and, as noted above, the parties had no significant disputes about the availability of that process to DOCCS inmates, as a general matter.  She also confirmed that DOCCS had no record of any grievance appeals filed by plaintiff in 2019; but, even if plaintiff had attempted to pursue an appeal to CORC, it is unlikely that a copy would have been transmitted to CORC.[6]  (*Id*.

---

[6] The IGP Supervisor at Franklin stated that, if she had received correspondence from plaintiff seeking to appeal, to CORC, a grievance that was never filed at the facility, she would not have forwarded that correspondence to CORC, but would have maintained a copy in the Franklin IGP.  (1/6/22 Tr. at 152-53, 163).  As noted below, Ms. Wilcox found no evidence that plaintiff ever submitted any such correspondence to the Franklin IGP in August or September 2019.  Ms. Seguin also testified that a letter from an inmate seeking to appeal a grievance that was never filed at the facility level would not have been logged as an appeal at CORC, but might be filed in a general CORC correspondence file.  Ms. Seguin did not recall whether she searched the CORC general correspondence file for any communications in 2019 from plaintiff.  (12/21/21 Tr. at 56-58).

at 27-29; Def.s' Ex. 2.). Ms. Seguin testified that, although CORC occasionally receives complaints from inmates that they attempted to submit grievances that were never filed, neither she, nor her staff has substantiated any such complaints. (12/21/21 Tr. at 40, 48, 53-54). She also stated that, because of the confidentiality of the IGP, her staff in Albany would not have provided any information to third parties, including an inmate's family member, about the status of any grievances related to a DOCCS inmate. (12/21/21 Tr. at 26-27).

Donna Wilcox, the current IGP Supervisor at Franklin, testified about how the grievance process worked at Franklin and how records submitted to the IGP were processed and maintained. As noted above, she was not the IGP Supervisor at Franklin during the 2019 time period relevant to this case. However, she communicated with Judy Tavernier when Ms. Wilcox took the position approximately one year ago, and confirmed that the grievance procedures followed at Franklin were "very similar" to those Ms. Wilcox followed as the IGP Supervisor at two other DOCCS facilities and those she now oversees at Franklin. (1/6/22 Tr. at 150-51, 153).

Ms. Wilcox testified that when an inmate submits a grievance or other internal correspondence at Franklin, the security staff picks them up with the facility mail daily, and they are then delivered to the mail room, where they are picked up by the IGP Supervisor. (1/6/22 Tr. at 129-30, 150). Two grievance representatives open and stamp the mail directed to the IGP, and it is then read, coded, titled, and processed. Each grievance is logged into a computer data base and a manual record, and those two logs are reconciled monthly. (*Id*.). Depending on the type of grievance, they are

processed and investigated by the IGRC or forwarded to the Superintendent for review and investigation. (*Id*. at 130, 157-59). Manual copies of all grievances, whether timely or not, or whether or not referred to the Superintendent for handling, as well as any correspondence to or from the IGP or CORC, are maintained for five years. (*Id*. at 130-133, 137-38, 152, 153-54). Correspondence is filed by month and alphabetically by inmate name. (*Id*. at 132-33, 137-38).

Ms. Wilcox reviewed her computer data base and manual files and found no record of plaintiff submitting a grievance at Franklin in 2019. (1/6/22 Tr. at 133-37; Def.s' Ex. 4). She testified that, if she had received correspondence from plaintiff stating that he had unsuccessfully tried to file a grievance and was resubmitting a copy within 21 days of the incident, she would have processed that as a grievance. (*Id*. at 152-53).[7] However, she testified that she found no evidence of any such submission from plaintiff. (*Id*. at 138-39). Ms. Wilcox also reviewed the monthly correspondence files for August and September 2019, and found no correspondence from plaintiff. (*Id*. at 137-39, 155, 161). Ms. Wilcox has received and investigated claims of inmates at Franklin that they submitted grievances that were not received or filed by the IGP, but she has not determined that any of those claims were well founded. (*Id*. at 148-49).

Ryan Ratliff, a corrections Sergeant at Franklin testified briefly about the manner in which inmates in the infirmary could submit a grievance in 2019. At around 10:30 p.m. each evening, a correction officer assigned to the infirmary, while conducting the

---

[7] If genuine, Plaintiff's Exhibit 2 would have been submitted within 21 days of the July 20, 2019 incident.

18

final count of inmates, would collect any mail, including grievances, and deposit the mail in a box at the front of the infirmary. (12/21/21 Tr. at 69-70). A roving correction officer on the midnight shift would collect mail from the facility mail boxes around 4 a.m., and would drop off the mail to the Administration Building, where it would be delivered to the civilian employees in the mail room. The mail would be sorted and delivered to the relevant departments, with grievances being delivered to the IGP. (*Id*.). On cross-examination Sgt. Ratliff testified that he was not aware of any instances where an inmate tried to submit a grievance to the IGP where it was not actually received by the IGP. (*Id*. at 71).

## IV.    **Findings and Conclusions**

As I observed at the conclusion of the exhaustion hearing, the determination as to whether plaintiff attempted to exhaust administrative remedies that proved to be unavailable to him, would require an evaluation of the plaintiff's credibility versus the persuasiveness of the defendants' testimony about the integrity of the grievance process and the record keeping of the IGP at Franklin. (1/6/22 Tr. at 163-64). The plaintiff relied entirely on his testimony and the copies of the correspondence he claims he tried to submit to the IGP on July 29, 2019 and August 14th.[8] Although the court

---

[8] As discussed above, plaintiff testified that two or three inmates at Franklin told him about a few prior incidents where inmates attempted to submit grievance to the IGP that were never filed. While there was no objection to this testimony, those hearsay statements have limited probative force. As noted above, plaintiff acknowledged that he did not have any other problems with the facility mail at Franklin during the relevant time period. While the defense witnesses acknowledged that they sometimes learned of inmate complaints about missing grievances, they testified that they were not aware of any complaints at Franklin, or other DOCCS facilities, that proved to be well founded.

allowed some supplemental discovery so that plaintiff could attempt to identify the inmate witnesses with whom he allegedly had contemporaneous discussions about his efforts to submit his grievance, none were called.[9]  The plaintiff was clearly not in a position to know how his submissions to the IGP may have been lost or diverted.

The defense witnesses had no direct knowledge as to whether plaintiff contemporaneously drafted and submitted documents to the IGP between July 29th and early September 2019, but relied primarily on the fact that none of the three documents plaintiff claimed to submit were found in the files of the Franklin IGP.  The defense did not call the retired IGP Supervisors who worked at Franklin during the relevant time period, nor did they call the two individual defendants, to testify about whether or not they did anything to interfere with plaintiff's efforts to exhaust his administrative remedies.

As noted above, the DOCCS Assistant Director who oversees the IGP conceded, during her hearing testimony, that a grievance that has not been filed or assigned a grievance number at the facility level, may not be appealed to CORC.  Following the Second Circuit's decision in *Williams v. Priatno*, DOCCS apparently no longer takes the position an inmate who tries to submit a grievance that is not filed at the facility level is required to appeal to the next levels in the process in order to exhaust his administrative remedies.  Thus, plaintiff did not need to attempt to appeal to CORC, as he claimed he did in September 2019, in order to establish that the grievance process

---

[9] The court acknowledges the logistical challenges for an inmate, even with the help of pro bono counsel, to identify and produce other inmates to testify on his behalf.

was not available to him under *Williams*.  Nonetheless, plaintiff's inconsistent statements about his third communication to the IGP Supervisor at Franklin relating to the July 29, 2019 incident (discussed above), undermines plaintiff's credibility and casts substantial doubt on his claim that he previously attempted to submit a grievance on July 29th and then again on August 14th.

While acknowledging that the defense has no direct knowledge of when plaintiff created the grievance and related communication he presented at the hearing, they take the position that these documents were created after plaintiff decided he wanted to pursue a lawsuit and realized that he had failed to exhaust his administrative remedies. (1/6/22 Tr. at 172).  Defense counsel pointed out that, although a civil rights plaintiff has no obligation to address exhaustion in his complaint, plaintiff added detailed exhaustion allegations in his amended complaint.  (*Id*.).  As discussed above, the primary purpose of the amended complaint was to identify the John Doe defendant(s) by name.  The docket reflects nothing regarding exhaustion issues that would have prompted plaintiff to add such allegation, after not including them in his initial complaint.

The plaintiff has testified that he first wrote out and submitted his grievance in the infirmary during the evening following his surgery and his forced march, without crutches, through the Franklin parking lot and Administration Building.  (12/21/21 Tr. at 82).  Plaintiff stated that he was still experiencing considerable pain.  (*Id*.).  Given that an inmate has 21 days after an incident to file a timely grievance (*Id*. at 15), it seems somewhat implausible that plaintiff, in those circumstances, would have had the

21

inclination or the ability to create, in very clear and neat handwriting, two "word for word" versions of the four-page grievance.  (See Pl.'s Ex. 1).

Plaintiff testified that he submitted his second communication to the IGP at Franklin on August 14, 2019, while he was back in general population, by placing it in the facility mailbox in his residential unit.  (12/21/21 Tr. at 86, 88-89).  While plaintiff was not consistent in his statements about the third submission to the IGP, he has stated, under oath, that he also placed that communication in the facility mailbox in early September 2019.  Even if the two defendants, who according to plaintiff, were determined to finish their shift, had been inclined to stay at Franklin on July 29th to try to intercept any grievance that plaintiff might try to submit, it seems highly unlikely that the defendants could have succeeded in blocking all three submissions by plaintiff to the IGP over a period of approximately two months.  There is no evidence in the record to suggest that anyone other than the two defendants would have had any reason to divert plaintiff's correspondence to the IGP.  As noted above, plaintiff acknowledged that he did not have any issues with any of the staff at Franklin other than the defendants.  The mail room and IGP staff are "civilians," not correction officers.

Plaintiff testified that he understood, when he was attempting to exhaust his administrative remedies with respect to the July 29, 2019 incident, that he could not appeal a grievance that was never acknowledged by the IGP at Franklin.  (12/21/21 Tr. at 90-91).  Nonetheless, plaintiff has represented that, when he received no response to the grievance he allegedly submitted on July 29th, he twice attempted to appeal to the

next levels–to the Superintendent on August 14th, and to CORC on or about September 3rd. He also testified that his daughter, who was not called to testify, was told in the fall of 2019, by DOCCS personnel in Albany, that they had no record of any grievance filed by plaintiff. That contradicts the testimony of Rachel Seguin, who testified that CORC staff would not disclose information about inmate grievances to any third party, including family members of an inmate.

The court is not in a position to determine, with certainty, when plaintiff may have drafted the grievance documents upon which he relied in this action, or how such documents might have been diverted if they were submitted to the IGP, as plaintiff claims. However, I find that the testimony of the defense witnesses credibly established that the grievance process at Franklin was sufficiently reliable that all three submissions plaintiff purportedly made to the IGP in Franklin, between the July 29, 2019 incident and September of that year, would not have been lost or diverted. Based on the evidence of record and my evaluation of the plaintiff's testimony, I conclude that his version of his repeated efforts to try exhaust his administrative remedies is not credible. Accordingly, I have determined that plaintiff has not sustained his burden of production that the grievance process at Franklin was not available to him in connection with the July 29, 2019 incident, and that the defendants have sustained their burden of proof, by a preponderance of the evidence, that plaintiff did not exhaust administrative remedies that were available to him.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the District Court rule that the plaintiff failed to

exhaust available administrative remedies with respect to the July 29, 2019 incident that is the subject of this action, and it is further

**RECOMMENDED**, that the surviving claims under 42 U.S.C. § 1983 in plaintiff's Amended Complaint (Dkt. No. 9) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: February 9, 2022

Andrew T. Baxter
U.S. Magistrate Judge